**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
LAUNA ADOLPH (SBN 227743)
ladolph@maternlawgroup.com
KAYVON SABOURIAN (SBN 310863)
ksabourian@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Tel: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff ESTELA CERVANTES, individually and on behalf of others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA CERVANTES, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>IHG MANAGEMENT (MARYLAND) LLC, a Maryland limited liability company; and DOES 1 through 50, inclusive,<br><br>　　　Defendants. | Case No. 2:18-cv-10005-RGK-MAA<br><br>**DECLARATION OF MATTHEW J. MATERN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; and [Proposed] Order Granting Preliminary Approval of Class Action Settlement]<br><br>Date:　　　April 22, 2019<br>Time:　　　9:00 a.m.<br>Courtroom:　850 |

I, MATTHEW J. MATERN, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am admitted to practice before this Court. I am the principal of Matern Law Group, PC, counsel of record for plaintiff Estela Cervantes ("Plaintiff") in the above-entitled action ("Action"). I make this declaration on the basis of personal firsthand knowledge, unless another source of information or belief clearly appears from the context, and as to all such matters I believe them to be true. If called as a witness, I could and would readily and competently testify to all matters stated herein.

2. This declaration is submitted in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

## The Parties

3. Defendant IHG Management (Maryland) LLC ("Defendant") is national hotel operator that operated the Crowne Plaza Redondo Beach and Marina hotel in Redondo Beach, California throughout the Class Period.

4. Plaintiff was employed by Defendant as a room attendant at the Crowne Plaza Redondo Beach and Marina hotel from August 2001 to July 30, 2017.

5. Based on information provided by Defendant's counsel, I am informed and believe that, as of February 2019, the proposed class consisted of approximately 210 persons.

## Background

6. On September 28, 2018, Plaintiff filed this putative class and representative action against Defendant in Los Angeles Superior Court, alleging causes of action for: (1) failure to provide meal periods; (2) failure to authorize and permit rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate itemized wage

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-1-   DECL. OF MATTHEW J. MATERN ISO PL.'S MOT. FOR PRELIMINARY APPROVAL

statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) unfair and unlawful business practices; and (10) penalties under the Labor Code Private Attorneys General Act ("PAGA").

7. On November 28, 2018, Defendant answered the Complaint.

8. On November 29, 2018, Defendant removed this case to this Court under the Class Action Fairness Act.

### Discovery and Investigation

9. Prior to filing the Complaint, Plaintiff's counsel conducted an extensive investigation including interviewing Plaintiff, reviewing documents provided by Plaintiff and other publicly-available documents, and conducting research regarding applicable California Labor Code sections and the Industrial Welfare Commission Wage Order.

10. The Parties also engaged in significant discovery after the Complaint was filed. Plaintiff propounded written discovery, including interrogatories, requests for admission, and requests for production of documents.

11. Following receipt of Defendant's responses, the Parties engaged in extensive meet and confer efforts and participated in an informal telephonic discovery conference with Magistrate Judge Maria A. Audero. As a result of the parties' meet and confer efforts, Defendant supplemented its discovery responses.

12. Defendant also propounded, and Plaintiff responded to, interrogatories and requests for production of documents.

13. Prior to mediation, Defendant produced, among other documents, all relevant wage and hour policy documents, collective bargaining agreements, and a sampling of the timekeeping and payroll records. Plaintiff retained a statistical analyst to analyze the sampling of class members' timekeeping and payroll records, which assisted Plaintiff's counsel in preparing a damages model prior to mediation.

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-2-

DECL. OF MATTHEW J. MATERN ISO PL.'S MOT.
FOR PRELIMINARY APPROVAL

14. Based on the information and record developed through extensive investigation and discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the proposed Settlement.

### Settlement Negotiations

15. On February 15, 2019, the Parties participated in a private mediation session with Lisa Klerman, Esq., a well-respected mediator experienced in handling complex wage-and-hour matters. The mediation session lasted all day but the Parties were unable to reach a resolution.

16. Following the mediation, the Parties continued to engage in settlement discussions with the assistance of Ms. Klerman.

17. On April 12, 2019, Ms. Klerman issued a mediator's proposal which set forth the material terms of a proposed settlement which would fully resolve this matter.

18. The Parties accepted the mediator's proposal on April 13, 2019, subject to entering into a more comprehensive written settlement agreement.

19. The Stipulation of Class Action Settlement ("Stipulation") was fully executed on March 22, 2019. A true and correct copy of the Stipulation is attached hereto as Exhibit A.

20. The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. Both Parties went into the mediation session willing to explore the potential for a settlement of the dispute, but were prepared to litigate their position through trial and appeal if a settlement had not been reached. The Settlement represents a resolution of disputed claims.

### Amount in Controversy and Risks Associated With Continued Litigation

21. In reaching a decision to settle the Action, Plaintiff and her counsel considered the risks and obstacles of continued litigation, including but not limited to, the risks of obtaining and maintaining class certification, the burdens of proof necessary to establish liability, the class certification and merits defenses raised by

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-3-   DECL. OF MATTHEW J. MATERN ISO PL.'S MOT.
FOR PRELIMINARY APPROVAL

Defendant, the difficulties in establishing damages, the likelihood of success at trial, and the probability of appeal in the event of a favorable judgment for Plaintiff. Plaintiff's counsel also considered the recommendation of the mediator who is experienced in handling complex wage-and-hour matters.

22. Based on data provided by Defendant, Plaintiff's counsel calculates the maximum potential damages, exclusive of penalties and interest, to be approximately $2,635,313.60, in the event that (1) Plaintiff's meal break, rest, break, minimum wage, and overtime claims are certified; and (2) Plaintiff is able to establish liability on each of these claims at trial. The maximum potential damages estimate is based on a detailed analysis of the time and payroll records provided by Defendant, review and analysis of relevant policy documents, and information obtained from Plaintiff. A detailed explanation of Plaintiff's valuation is set forth below.

### a. Meal Break Violations

Plaintiff alleges that Defendant failed to provide Plaintiff and other Class Members lawful meal breaks. Specifically, Plaintiff contends that Defendant's HOTEL Policies and Procedures Manual and Crowne Plaza Redondo Beach and Marina Hotel Addendum failed to advise employees that they were entitled to a meal period within the first five hours of their shifts. Expert analysis of the sample time and payroll records shows that a meal period was recorded after the end of the fifth hour on 27.4% of shifts over five hours with a recorded meal period.

Recently, the Ninth Circuit in *Perez v. Alta-Dena Certified Dairy, LLC*, 741 F. App'x 365 (9th Cir. 2018) reversed an order denying certification of plaintiff's meal break timing theory, finding that common issues predominated, including whether defendant's written policy, which failed to advise employees they were entitled a to a meal break within the first five hours of a shift, was unlawful on its face. *Id.* at 366. However, a number of courts have declined to certify claims that

employees were deprived of timely meal breaks, absent evidence of a consistent practice to violate the law.

Plaintiff calculates the maximum potential damages for meal break violations as follows:

```
   17,057 (shifts in data sample over 5 hours with a recorded 1st meal period)
x   6.51 (extrapolated to entire class - workweeks in class/workweeks analyzed)
x  27.4% (violation rate)
x  $16.71 (average hourly rate)
   $508,405.98
```

### b. Rest Break Violations

Plaintiff contends that Defendant failed to authorize and permit lawful rest breaks based on Defendant's policies which prohibited employees from leaving the premises during rest breaks. In *Augustus v. ABM Security Services*, 2 Cal. 5th 257 (2016), the California Supreme Court held that an employer must relieve its employees of all duty and relinquish control over how employees spend their time during rest breaks. *Id*. at 269. Following *Augustus*, the DLSE confirmed that, consistent with its obligation to relinquish control over employees, an employer cannot require an employee to stay on the work premises during rest periods. *See* DLSE FAQs regarding "Rest/Periods/Lactation Accommodation." However, at least one court has upheld dismissal of plaintiffs' on-premises rest break theory following *Augustus*. *See Bell v. Home Depot U.S.A., Inc.*, 2017 WL 1353779, at *2 (E.D. Cal. Apr. 11, 2017) (denying motion for reconsideration and finding that because the *Augustus* court "did not directly consider an on-premises rest break policy . . . *Augustus* does not merit alteration of this Court's judgment."). Defendant also argued it would present evidence that employees were not prohibited from leaving the premises during rest breaks.

Plaintiff calculates the maximum potential damages for rest break violations as follows:

```
       18,927  (shifts over 3.5 hours in data sample)
    x   6.51  (extrapolated to entire class - workweeks in class/workweeks analyzed)
    x   100%  (violation rate)
    x  $16.71 (average hourly rate)
       $2,058,918.81
```

    **c.**    **Rounding**

Plaintiff contends that Defendant failed to pay minimum and overtime wages due to its practice of rounding employees' clock in and clock out times to the nearest quarter hour. In the sample time and payroll records produced by Defendant, Plaintiff's expert found 625 underpaid hours due to rounding. Thus, Plaintiff believes that her rounding claim is appropriate for class treatment and can be adjudicated in favor of the class. Defendant, on the other hand, contends that it utilizes a facially-neutral rounding system that rounds employee time in both directions to the nearest 15-minute interval. Additionally, Defendant contends that time records alone are not determinative on a rounding claims and that individualized inquiries are necessary to determine if employees were working or subject to the control of the employer during any rounded time. Also, Defendant argues that nearly a third of the Class Members were subject to collective bargaining agreements that provided for meal and rest breaks, and the payment of overtime. Defendant argued that these unionized employees' overtime claims were barred by the exemption in California Labor Code Section 514.

Plaintiff calculates the maximum potential damages due to rounding as follows:

```
       625   (underpaid hours in sample)
    x   6.51 (extrapolated to entire class - workweeks in class/workweeks analyzed)
    x  $16.71 average hourly rate
       $67,988.81
```

23. As noted above, Defendant contests liability, as well as the propriety of certification, and is prepared to vigorously oppose certification and to defend against Plaintiff's claims if the Action is not settled. Furthermore, prior to the mediation in this Action, Defendant reached a settlement in *Merzouki v. IHG*

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-6-

DECL. OF MATTHEW J. MATERN ISO PL.'S MOT.
FOR PRELIMINARY APPROVAL

*Management Maryland LLC, et al.*, Los Angeles Superior Court Case No. BC685729. In *Merzouki*, plaintiff alleged claims for (1) failure to pay wages for all time worked at minimum wage in violation of Labor Code Sections 1194 and 1197; (2) failure to pay proper overtime wages for daily overtime hours worked and all hours worked in violation of Labor Code Sections 510, 1194, and 1198; (3) failure to authorize or permit rest periods in violation of Labor Code Section 226.7; (4) failure to provide complete and accurate wage statements in violation of Labor Code Section 226; (5) failure to timely pay all earned and final paychecks due at time of separation of employment in violation of Labor Code Sections 201, 202, and 203; (6) Unfair Business Practices in violation of Business and Professions Section 17200, et seq.; and (7) violations of PAGA, on behalf of all current and former hourly non-exempt employees employed by Defendant in California since December 4, 2013. Defendant contends that, if approved, the settlement in *Merzouki* will dispose of the claims of the class members in this Action for minimum and overtime wages, rest break violations, wage statement violations, waiting time penalties, unfair competition, and PAGA penalties.

24. Given the potential damages, as well as the substantial risks to recovery as discussed herein, including the *Merzouki* settlement, the non-reversionary Maximum Settlement Amount of $510,000 is within the range of possible approval.

25. The Settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiff's claims. If the Court denied class certification, Class Members would not be entitled to any payment whatsoever. Furthermore, even if Plaintiff obtained certification of all or some of the claims, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the Class Members. The Class Members will greatly benefit from the Settlement by receiving timely relief and avoiding the risk of an unfavorable judgment.

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-7-

DECL. OF MATTHEW J. MATERN ISO PL.'S MOT.
FOR PRELIMINARY APPROVAL

26. While Plaintiff is confident in the merits of the case, a legitimate controversy exists as to each cause of action. Plaintiff also recognizes that proving the amount of wages due to each individual Class Member would be an expensive and time-consuming proposition. In order to prove liability and damages, Plaintiff would need to obtain the contact information of absent Class Members and contact the Class Members and obtain numerous declarations at significant expense. Obtaining the cooperation of current employees would also be difficult, given their likely reluctance to aid the prosecution of a lawsuit against their current employer. Because of the proposed Settlement, Class Members will receive timely relief and avoid the risk of an unfavorable judgment.

27. Based on an estimated Net Settlement Amount of $290,950.00, it is estimated that each Class Member, on average, will receive $1,385.48 as a result of the Settlement.

28. In sum, when the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiff's claims, it is clear that the settlement amount is fair, adequate, and reasonable.

**Adequacy of Representation and Qualifications of Class Counsel**

29. MLG is a 20-attorney law firm that is actively and continuously practicing in employment litigation, almost exclusively representing employees in both individual and class actions in both state and federal courts throughout California.

30. MLG is qualified to handle this litigation because the firm is experienced in litigating Labor Code violations in both individual and class action cases. MLG has handled, and is currently handling, numerous wage and hour class action lawsuits.

31. I received a B.A. with honors in 1986 from Tulane University. I received my J.D. from Southwestern University School of Law in 1991. I became an active member of the State Bar of California in September 1992, and have been an active member in good standing continuously since then. I have been practicing as a litigation attorney in Los Angeles since 1992, and have been concentrating on employment litigation since approximately 1997.

32. In 1992, I founded the general partnership which later became knowns as Rastegar & Matern, Attorneys at Law, A Professional Corporation. In 2012, I founded the Law Offices of Matthew J. Matern, which changed its name to Matern Law Group in January 2014, and then to Matern Law Group, PC in May 2016. Since 1992, I have been heavily, successfully, and continuously involved in active litigation and trial work, including extensive work in employment litigation and wage and hour class actions.

33. Over the course of my career, I have been involved in over 100 class action settlements, with many of them settling in the seven figure range, including settlements in the amount of $8.5 million, $7.0 million, $6.0 million, $6.0 million, $5.0 million, $4.5 million, $4.5 million, $4.2 million, $4.2 million, $3.75 million, $3.75 million, $3.6 million, $3.3 million, $3.1 million, and $3.0 million. I have represented clients in numerous wage and hour class action lawsuits that settled with per-class-member recoveries in a range similar to the anticipated per-class-member recovery in the instant case. I have also been appointed class counsel in twenty certified wage and hour class action cases which involved contested certification proceedings.

34. I have been counsel in a number of cases which resulted in published appellate victories including *ABM Industries Overtime Cases*, 19 Cal. App. 5th 277 (2017); *Julian v. Glenair, Inc.*, 19 Cal. App. 5th 277 (2017); *Franco v. Athens Disposal Company, Inc.,* 171 Cal. App. 4th 1277 (2009); *Gutierrez v. California Commerce Club,* 187 Cal. App. 4th 969 (2010); *Pantoja v. Anton,* 198 Cal. App.

4th 87 (2011); *Fuentes v. AutoZone, Inc.,* 200 Cal. App. 4th 1221 (2011); *Ventura v. ABM Industries, Inc.*, 212 Cal. App. 4th 258 (2012); and *Franco v. Arakelian Enterprises, Inc.,* 211 Cal. App. 4th 314 (2012); and other non-published appellate victories.

35. Of the 20 attorneys at MLG, I am the attorney with the most active trial and pretrial calendar. I have personally tried approximately twenty-five cases, including approximately twenty jury trials.

36. My work has led me to be recognized as a Southern California Super Lawyer every year since 2009.

37. Launa Adolph is a senior associate at MLG. She graduated from the University of California, Los Angeles in 2000 and received her J.D. from Loyola Law School in 2003. She has been an active member of the California State Bar in good standing since December 2003. She is also admitted to practice in Illinois. Ms. Adolph has over 15 years of experience handling wage-and-hour and consumer class actions, and has been appointed class counsel in scores of cases in state and federal courts in both California and New York. Recently, she has was part of the trial team in a certified wage and hour class action trial alleging claims for failure to pay overtime wages. Her work has led her to be recognized as a Southern California Super Lawyer in 2014, 2015, 2016, 2017, 2018, and 2019, and as a Southern California Rising Star in 2013.

38. Kayvon Sabourian is an associate at MLG. Mr. Sabourian graduated from Cornell University in 2006 and received his J.D. from University of Texas, School of Law in 2010. He has been an active member of the Texas State Bar since May 2011 and the California State Bar since October 2016. Mr. Sabourian has experience with single-plaintiff and class action lawsuits in state and federal courts throughout California and Texas. He has handled wage and hour class actions and Fair Labor Standards Act collective actions involving claims relating to overtime, meal and rest breaks, misclassification, and improper wage

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE,
STE 200
MANHATTAN BEACH, CA
90266

-10-    DECL. OF MATTHEW J. MATERN ISO PL.'S MOT. FOR PRELIMINARY APPROVAL

statements. Mr. Sabourian was recognized as a Southern California Rising Star in 2017 and 2019.

39. I am not aware of any conflicts of interest between MLG and the Class Members. No one at MLG has any financial interest in or otherwise has a relationship with Rust Consulting, Inc. which would create a conflict of interest.

40. I also am not aware of any conflict of interest between Plaintiff and the Class Members. Plaintiff's interests are aligned with those of the Class Members, as she seeks payment for unpaid wages on behalf of the Class Members.

41. MLG has sufficient resources to vigorously pursue the claims on behalf of the class.

42. Although I was prepared to litigate the claims in this action, I support the proposed Settlement as being in the best interests of the Class Members.

43. Both Plaintiff and MLG have demonstrated that they will vigorously represent the Class Members. Plaintiff has taken an active role as class representative by, among other things, attending numerous meetings with counsel, keeping apprised of the status of the case, locating documents, answering questions, and providing the facts and evidence necessary to prove the allegations in this Action.

### Class Counsel Award and Settlement Administration Costs

44. The Settlement provides for attorneys' fees and costs to Class Counsel in an amount not to exceed thirty-three percent (33%) of the Maximum Settlement Amount, which amounts to One Hundred Sixty-Eight Thousand Three Hundred Dollars ($168,300.00), plus reimbursement of reasonable litigation costs and expenses in an amount of up to $22,000.00. I believe the fees and costs provision is reasonable based on the amount and nature of the work performed, my hourly rate and the hourly rate of other attorneys at my firm, and the result achieved, among other factors. MLG will submit additional information regarding the work

performed and request for attorneys' fees in connection with its Motion for Attorneys' Fees, to be considered at the time of the Final Approval Hearing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 25, 2019, at Manhattan Beach, California.

*/s/ Matthew J. Matern*
Matthew J. Matern
